P. C. GOEMBEL v. HERMAN HEESCH.[1]

May 15, 1942.

No. 33,117.

*Hall & Catlin,* for appellant.
*Atwood Cranston,* for respondent.

HOLT, JUSTICE.

After a directed verdict for defendant, plaintiff moved for judgment *non obstante* or a new trial. From the order denying the motion, plaintiff appeals.

Plaintiff sued for the conversion of a Buick sedan. The complaint alleged that defendant, the sheriff of Pipestone county, on August 7, 1940, wrongfully levied upon and took the Buick under process directed against Al Frick, doing business as the Motor Inn Garage, to plaintiff's damage in the sum of $1,110. It also alleged that on August 17, 1940, plaintiff served on defendant an affidavit of his title and right to possession of the Buick, and that defendant refused to relinquish possession. Defendant's answer admitted the seizure of the Buick under process in the replevin action brought by the Credit Investment Corporation v. Al Frick,

1Reported in 4 N. W. (2d) 104.

doing business as the Motor Inn Garage; that Al Frick had given a chattel mortgage to the Credit Investment Corporation, and the car was seized lawfully for default in the payment of the mortgage debt. The reply put in issue the validity of the chattel mortgage.

The real controversy is between plaintiff and the Credit Investment Corporation, the former claiming that Al Frick pledged the Buick in March 1940, when plaintiff, at Frick's request, paid the sight draft accompanying the bill of lading and received delivery of the car—the latter claiming that on June 17, 1940, it in good faith took from Al Frick, then in possession of the Buick and a used car, a chattel mortgage thereon to secure the sum of $1,423.12 then loaned Frick. The chattel mortgage was duly filed in the office of the register of deeds of Pipestone county June 21, 1940.

According to the memorandum, made a part of the order appealed from, the court below conceded that there was testimony to go to a jury as to whether or not the Buick was pledged to plaintiff in March 1940; but directed the verdict on the ground that the Credit Investment Corporation on June 17, 1940, for value and in good faith, took the chattel mortgage on this Buick, then in possession of Al Frick in the salesroom of the Motor Inn Garage. The evidence is undisputed that from the date the chattel mortgage was executed until August 7, 1940, when the sheriff seized the car under the writ of replevin, the Buick remained all the time in the Motor Inn Garage in Al Frick's possession. Plaintiff, who leased the Motor Inn to Frick and lived above it, testified that on June 15, 1940, he took the Buick from the Motor Inn Garage, where for some weeks before it had been exposed for sale in the show window, and placed it in the rear room of his adjoining building; that when he returned from a fishing trip a week later and found the Buick back in the show window of the Motor Inn he told Al Frick he did "not like it"; but he admits that he let it remain there until taken by the sheriff as stated. We think by so doing plaintiff abandoned or relinquished his rights as pledgee, as against a good faith purchaser for value. The conduct

of plaintiff according to his own admissions on cross-examination is entirely inconsistent with the contention now made that possession was surrendered for a temporary purpose, or that possession by Al Frick was obtained wrongfully and surreptitiously.

The law as to pledges was clearly stated in Combs v. Tuchelt, 24 Minn. 423, in the first paragraph of the syllabus: "To constitute a pledge, the pledgee must take possession, and to preserve it, must retain possession of the pledged property. If, after having taken possession, he relinquishes it, the pledge is extinguished." See also Mahoney v. Hale, 66 Minn. 463, 69 N. W. 334. Both litigants cite and rely on Clark v. Corser, 154 Minn. 508, 191 N. W. 917. The judgment was there reversed because of inconsistent findings. The finding that Clark, the pledgee, was in possession of the pledged car when Corser took his chattel from the pledgor was antagonistic to the finding that the mortgage was taken in good faith and without notice of Clark's rights. This decision is recognized as good law in In re Smith-Flinn Comm. Co. (8 Cir.) 292 F. 465, where the pledged certificate, surrendered to the pledgor by mutual mistake of the parties, did not defeat the lien of the pledgee as against the trustee in bankruptcy of the pledgor. Such trustee stands in the shoes of the bankrupt. To the same effect is Hamilton Nat. Bank v. McCallum (6 Cir.) 58 F. (2d) 912.

Plaintiff also cites decisions from other states, among them Rice & Bullen Malting Co. v. International Bank, 185 Ill. 422, 56 N. E. 1062; Clare v. Agerter, 47 Kan. 604, 28 P. 694; Marx Co.'s Trustee v. Marx, 223 Ky. 339, 3 S. W. (2d) 644; Radigan v. Johnson, 176 Mass. 433, 57 N. E. 691; Ainsworth v. Kruger, 80 Mont. 468, 260 P. 1055; Sneeden v. Nurnberger's Market, 192 N. C. 439, 135 S. E. 328; Waken v. Bimstrom, 172 Okl. 232, 45 P. (2d) 97; Lippman v. Ross, 130 Wash. 319, 226 P. 1017, 1018. The Rice & Bullen Malting Co. case, 185 Ill. 422, was decided on the ground that, as against a purchaser who was informed of the pledgee's right before the purchase price was paid, the pledgee's lien is in effect. The Clare case, 47 Kan. 604, held that the loan of the team pledged to the pledgor for a six-mile trip did not constitute a relinquish-

ment of the pledgee's lien. Marx Co.'s Trustee case, 223 Ky. 339, does not sustain plaintiff's contention in the case at bar. There was a recovery for unlawful preference under the Kentucky statute, but a claim under a good faith chattel mortgage was held valid. The Radigan case, 176 Mass. 433, involves no dispute as between pledgee and a *bona fide* purchaser of the pledgor. In the Ainsworth case, 80 Mont. 468, there is nothing to sustain plaintiff's contention on this appeal. The Sneeden case, 192 N. C. 439, supports the direction of the verdict rather than the contrary. The Waken case, 172 Okl. 232, was an action to quiet title to land, and remarks *arguendo* can lend no aid to either side in the instant case. In the Lippman case, 130 Wash. 319, it was held that "a sale of pledged property while temporarily in the possession of the pledgor does not defeat the lien of the pledgee," citing Rice & Bullen Malting Co. v. International Bank, *supra*. In the Lippman case the pledged property was always in the custody of Kotkins, the warehouseman for the pledgee.

In the instant case each side bases the cause of action upon the rights derived from Al Frick. Frick denied any pledge, but admitted that plaintiff loaned him $2,702.23 on March 11, 1940, to take up or pay the sight draft accompanying the bill of lading from the manufacturer; that that sum covered the purchase price of three Buick cars; that because of lack of room in the Motor Inn Garage plaintiff permitted one or two of these cars to be temporarily placed in the rear room of his adjoining store; that one car was sold at once, and $950 received therefor was paid to plaintiff; that the Buick in question was in the Motor Inn Garage in the salesroom and show window all of May and after, until replevined, without any demand from plaintiff for possession. But this testimony of Frick must be laid aside and that of plaintiff accepted. However, so doing, we hold that plaintiff's conduct, according to his own admissions on cross-examination, is so clearly inconsistent with the claim now made that possession of this Buick was wrongfully and surreptitiously taken from him by Frick after plaintiff left for his fishing trip June 15 that no verdict

could be based on the theory that his lien as pledgee, if any there was, had not been relinquished.

The fact that the chattel mortgage was acknowledged in Nobles county cannot raise a jury question as to the good faith of the Credit Investment Corporation mortgage, or that it was taken for value on June 17, when it was in the Motor Inn in possession of Al Frick.

The order is affirmed.